UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

| | |
|---|---|
| GARRETT WHITTENBURG, | |
| Plaintiff, | |
| v. | CAUSE NO. 2:23-CV-421-PPS-JEM |
| LAKE COUNTY FACILITY, et al., | |
| Defendants. | |

OPINION & ORDER

Garrett Whittenburg, a prisoner without a lawyer, filed a "Motion to Lift Stay" and two additional motions. ECFs 23, 24, 25.[1] They are all related to the stay that was imposed in this case because Whittenburg failed to pay the required fees despite evidence he had the funds to do so. After consideration of the record in its entirety, I find he has acted in bad faith throughout the course of this litigation with regard to the filing fee, so the motion will be denied, and this case will be dismissed.

As relevant background information, Whittenburg has filed twenty-seven cases in the Northern District of Indiana between February 13, 2023, and February 27, 2025. Seventeen of those cases, including this one, were filed in late November to early December of 2023. I granted Whittenburg leave to proceed in forma pauperis in this case on December 5, 2023, and he was ordered to immediately pay an initial partial filing fee of $96.94. ECF 3. In addition, he was ordered to pay 20% of all deposits for any

---

[1] In his two most recent motions, Whittenburg asserts Magistrate Judge John E. Martin lifted the stay in one of his cases. Whittenburg is incorrect. Judge Martin did not lift the stay in any of his cases.

month he received $10.00 or more. *Id*. Because he had not made a payment in over three months, Magistrate Judge John E. Martin twice ordered him to file a copy of his inmate trust fund ledger and explain why he had not paid. ECF 11 & ECF 15. When Whittenburg finally responded in mid-May of 2024 and submitted his inmate trust fund ledger as directed (ECF 16), he did not explain why he had failed to ensure any payments be made to the court, nor did he outline what steps, if any, he took to facilitate such payments. *See generally* ECF 17. Notably, although the updated ledger showed he had received $1,888.45 since he was originally ordered to pay, he had not made a single payment to the court in *any* of his cases:

| Month | Deposits | Owed |
|---|---|---|
| Dec '23 | (Initial) | $96.94 |
| Dec '23[2] | $500.00 | $100.00 |
| Jan '24 | $800.25 | $160.05 |
| Feb '24 | $194.05 | $38.81 |
| Mar '24 | $394.15 | $78.83 |
| Apr '24[3] | $0.00 | $0.00 |
| **Totals** | $1,888.45 | $350.00[4] |

*Id.* at 1–2 (citing 16-1). Instead, he spent significant amounts of money on commissary items and phone cards. As Judge Martin pointed out, "[a]lmost without fail, as soon as Whittenburg received funds, he immediately spent them. For example, he received $696.20 on January 17, 2024, and he spent $567.74 on commissary items the next day.

---

[2] These deposits were received in December after the order granting him leave to proceed in forma pauperis was issued on December 5, 2023. *See* ECF 16-1 at 1.

[3] The ledger only shows transactions through April 23, 2024. *See* ECF 16-1 at 1.

[4] The initial partial filing fee plus 20% of his eligible deposits equals $474.63, but the full fee is only $350.

2

Within two weeks, the total rose to $701.50 spent on commissary items." *Id.* at 2, n.4. Whittenburg did not explain why he spent well over $350.00 (his arrearage in this case at the time it was stayed) when he knew he owed money to the court. *Id.* Accordingly, he was ordered to pay the full $350 filing fee, and the case was stayed pending receipt of that payment. *Id.* Judge Martin advised Whittenburg of the following:

> After he pays, he must file a motion asking to lift the stay along with a copy of his ledger demonstrating he has paid as required. If he is unable to pay the entire sum by December 15, 2024, he may file a motion asking to lift the stay along with a copy of his ledger demonstrating he paid as much as he was able even though he was unable to pay the full amount.

*Id.* at 2–3. He was reminded that "he is responsible for filing a motion asking to lift the stay, along with his updated ledger, after it has been paid." *Id.* at 3 (footnote omitted).

Whittenburg then sent the court several letters and motions (ECFs 18–21), which Judge Martin denied because he had not complied with the court's previous order. *See* ECF 22. Judge Martin noted that although Whittenburg repeated his assertion that the Jail was not "automatically" taking his funds to pay the fee and that the Jail was to blame because there was a delay in processing commissary deductions, he hadn't explained what steps he took to ensure the payments be made or why he repeatedly spent large sums of money on commissary items almost immediately after receiving it even though he was aware he owed the court for the filing fees. *Id.* at 2.

On January 24, 2025, Whittenburg filed the instant motion to lift the stay. ECF 23. In it, he claims he is "completely broke" *Id.* at 1. He admits he was receiving "large amount[s] of cash" from his family members. *Id.* He had hoped the Lake County Jail would use those funds to pay the filing fee, but they didn't. He faults the Jail for not

3

immediately putting the funds in the "owe section or hold section." *Id*. He also points out that on three separate days in December 2024 and January 2025, costs were automatically taken out for his medical expenses, and he claims he attempted to send the court his inmate ledger, but he could not receive copies. *Id*. at 1–2.

In the interest of judicial economy, Judge Martin obtained a copy of Whittenburg's inmate trust fund ledger directly from the Lake County Jail in one of his other cases. *See Whittenburg v. Lake County Facility*, cause no. 2:23-CV-413-PPS-JEM (N.D Ind. Nov. 27, 2023), at ECFs 25 & 26. It shows relevant transactions through February 1, 2025. *Id.*, at ECF 26. I will direct the clerk to attach a copy of the updated ledger to this order as Exhibit A. I have reviewed the ledger in detail and am ready to issue a ruling on this matter.

Under 28 U.S.C. § 1915(b)(1), a prisoner who brings a civil action is required to pay the full amount of the filing fee either up front or over time. If paying over time, the statute provides the court must collect an initial partial filing fee of 20% of the greater of the prisoner's "average monthly deposits" or the "average monthly balance in the prisoner's account for the 6-month period immediately preceding the filing of the complaint." *Id*. After payment of the initial partial filing fee, the prisoner must make monthly payments of "20 percent of the preceding month's income." 28 U.S.C. 1915(b)(2). Payments are collected under the mechanism set forth in the statute, and the court does not have authority to waive the fee, or to modify the amount or timing of payments. *Lucien v. DeTella*, 141 F.3d 773, 776 (7th Cir. 1998); *Newlin v. Helman*, 123 F.3d 429, 436 (7th Cir. 1997). ("A prisoner who files one suit remits 20 percent of income to

4

his prison trust account; a suit and an appeal then must commit 40 percent, and so on."). The statutory framework does not permit a prisoner's filing fee payments to be delayed or suspended. Once a prisoner decides to file a complaint, they must pay the entire filing fee in accordance with the procedures set forth in the statute. *See* 28 U.S.C. § 1915(b); *see also Hains v. Washington*, 131 F.3d 1248, 1250 (7th Cir. 1997) ("[T]he filing of a complaint (or appeal) is the act that creates the obligation to pay fees, and what the judge does later does not relieve a litigant of this responsibility."). Here, the filing of the complaint is what triggered Whittenburg's obligation to pay, and the statute "forbids outright forgiveness of the obligation to pay [it]." *Butler v. Deal*, 794 F. App'x 542, 544 (7th Cir. 2020) (citing *Maus v. Baker*, 729 F.3d 708, 709 (7th Cir. 2013)).

As noted above, this case was stayed on May 15, 2024, after Whittenburg failed to show cause why he had not paid the initial partial filing fee or explain why he did not ensure any payments be made to the court. *See generally* ECF 17. Since that date, Whittenburg's spending patterns have continued unabated despite the clear directions and expectations provided in Judge Martin's orders. For example, on June 2, 2024, Whittenburg received $497.15 in deposits.[5] Ex. A at 3. In less than two weeks he spent almost half of that amount—$280.86—on commissary purchases and phone cards. *Id*. Over the next two weeks he spent an additional $121.35. *Id*. In the midst of that

---

[5] Prior to these deposits—and *after* the submission of his previous ledger (ECF 16-1), which only showed transactions through April 23, 2024—Whittenburg received a deposit of $150.05 on April 28, 2024. Ex. A at 4. He spent $114.32 of that amount within three days and all but $0.17 of it by May 21, 2024. *Id*. at 3.

spending, the Jail did manage to deduct $96.94—enough for *one* initial partial filing fee in *one* of his many other cases—before Whittenburg continued spending again, leaving him with only $0.61 on June 26, 2024. *Id*. On June 30, 2024, Whittenburg received another deposit of $193.05. *Id*. The very next day he spent almost all of it—$161.37 to be exact—on commissary purchases, and another $16.42 on phone cards over the next two days.[6] *Id*. The pattern continued throughout July. On July 14, 2024, Whittenburg received several deposits totaling $776.20. *Id*. In less than a month, he spent $683.10—all but $93.10 of that original amount—on commissary items and phone cards.[7] *Id*. On August 15, 2024, the Jail deducted initial partial filing fees for two additional cases, and a partial initial partial for a third, leaving Whittenburg with a balance of $0.00 as of that date. *Id*. at 2–3. Three days later, Whittenburg received another $811.25 in deposits. *Id*. at 2. Again, in less than two months, he spent $767.16—all but $44.09 of it—on commissary items and phone cards.[8] *Id*. On October 17, 2024, the Jail deducted three $13.00 payments from Whittenburg's sparse remaining funds to be sent to the court for his other cases, leaving him with a balance of $5.09. *Id*. On October 27, 2024, Whittenburg received deposits totaling $303.10. *Id*. Within two days, Whittenburg spent $256.33 on commissary items. *Id*. He received additional deposits of $503.20 between

---

[6] The only reason his account was not negative by July 12, 2024, was because he received a refund of $22.40 from commissary for unavailable items on July 9, 2024. *See* Ex. A at 3.

[7] $138.87 was refunded from commissary during that period. *See* Ex. A at 2–3.

[8] The only reason his account was not negative by October 16, 2024, was because he received commissary refunds for unavailable items totaling $103.21 during that period. *See* Ex. A at 2.

November 10, 2024, and November 17, 2024, but by November 25, 2024, he had spent essentially all of that money on commissary purchases and phone cards, leaving him with a balance of only $4.16. *Id*. at 1–2. On December 1, 2024, Whittenburg received another $502.15 in deposits, and two days later he spent almost half of it—$250.51—on commissary items. *Id*. at 1. He spent the remaining funds by December 31, 2024, leaving him with a balance of $0.00.[9] *Id*. Finally, Whittenburg received deposits of $200.00 between December 31, 2024, and January 5, 2025, and spent all of that money by February 1, 2025, again leaving him with a balance of $0.00.[10] *Id*. A completion of the chart provided above, based on the updated ledger, shows the following:

| Month | Deposits | Owed |
|---|---|---|
| Dec '23 | (Initial) | $96.94 |
| Dec '23 | $500.00 | $100.00 |
| Jan '24 | $800.25 | $160.05 |
| Feb '24 | $194.05 | $38.81 |
| Mar '24 | $394.15 | $78.83 |
| Apr '24 | $150.05 | $30.01 |
| May '24 | $0.00 | $0.00 |
| Jun '24 | $690.20 | $138.04 |
| Jul '24 | $776.20 | $155.24 |
| Aug '24 | $811.25 | $162.25 |
| Sep '24 | $0.00 | $0.00 |
| Oct '24 | $298.10 | $59.62 |
| Nov '24 | $503.20 | $100.64 |
| Dec. '24 | $602.15 | $120.43 |
| Jan '25 | $100.00 | $20.00 |
| **Totals** | **$5,819.60** | **$350.00**[11] |

---

[9] $24.57 was deducted for medical expenses; all other funds were used on commissary items and phone card purchases. Ex. A at 1.

[10] $40.07 was deducted for medical expenses; all other funds were used on commissary items and phone card purchases. Ex. A at 1.

[11] The initial partial filing fee plus 20% of his eligible deposits equals $1,260.86 but the full fee owed per case is only $350.

7

*See* Ex. A at 1–4. In sum, from December 5, 2023—the date on which he was granted leave to proceed in forma pauperis and assessed an initial partial filing fee of $96.94—to February 1, 2025—the date his updated trust fund ledger runs through—Whittenburg received **$5,819.60** in deposits but paid **$0.00** towards this case.[12]

In his motion to lift the stay, which was filed on January 24, 2025, Whittenburg alleges he is now "completely broke,"[13] and he argues the Lake County Jail should have taken the funds out of his account as soon as they were deposited. Judge Martin addressed and correctly disposed of this argument at least twice—both when he calculated the arrearage of $350 and stayed the case on May 15, 2024 (ECF 17), and also when he denied Whittenburg's miscellaneous motions on December 19, 2025 (ECF 22). Essentially, it's clear Whittenburg was well aware he "immediately" owed an initial partial filing fee of $96.94 plus 20% of any other deposits (ECF 3) and then later that he owed an arrearage of $350. Whittenburg cannot lay the blame on the Jail's personnel for his own failure to reserve or set aside the required payments. As outlined in great detail above, he repeatedly and consistently spent large sums of money almost immediately after receiving it even after this case was stayed. It would be ideal if the Jail immediately withdrew the installment payments upon every single deposit. However,

---

[12] He made <u>zero</u> payments towards <u>any</u> case from December 5, 2023, to June 20, 2024, despite receiving $2,535.65 in deposits during that timeframe. *See* Ex. A at 3–4. During the remainder of the time his updated ledger covers—from June 21, 2024, to February 1, 2025, he made only $383.76 in <u>total</u> payments towards all of his cases combined, despite receiving an *additional* $3,283.95 during that timeframe. *See id.* at 1–4.

[13] However, in the three months leading up to the filing of his motion to lift the stay alone, Whittenburg received $1,205.35 in deposits.

it is Whittenburg's ultimate responsibility, as the plaintiff in this case, to ensure that his account maintains the funds necessary to actually pay those installments. *See Lucien*, 141 F.3d at 776 ("If in a given month the prison fails to make the required distribution from the trust account, the prisoner should notice this and refrain from spending the funds on personal items until they can be applied properly."); *see also Newlin*, 123 F.3d at 436 ("A prisoner who files one suit remits 20 percent of income to his prison trust account; a suit and an appeal then must commit 40 percent, and so on."). Payments must be collected under the mechanism set forth in the statute, and I do not have the authority to waive the fee, or to modify the amount or timing of payments. *Lucien*, 141 F.3d at 776. Whittenburg has provided no reasonable explanation for his failure to reserve the money for the payments he owes. He has had more than enough warning to comply with his financial obligations, and it is time to dismiss this case for nonpayment of the filing fee.

      I would hesitate to do so if Whittenburg had *never* had the money to pay the initial partial filing fee after it was assessed or any of the installments. *Cf.* 28 U.S.C. § 1915(b)(4) ("In no event shall a prisoner be prohibited from bringing a civil action or appealing a civil or criminal judgment for the reason that the prisoner has no assets and no means by which to pay the initial partial filing fee."). Nor would I feel the need to dismiss this case if it was the first time Whittenburg was told that he was in arrears. Yet, this is now the third time the court has identified missed installment payments (*see* ECF 17 & ECF 22), even after Whittenburg was explicitly told that he was responsible for reserving $96.94 for the initial partial filing fee and 20% of any other deposits to be

9

applied toward the filing fee. Whittenburg's repeated failure to pay what is owed when it is clear he had money to do so makes dismissal appropriate. *Cf.* 28 U.S.C. § 1915(e)(2)(A) ("[T]he court shall dismiss the case at any time if the court determines that . . . the allegation of poverty is untrue."). That said, dismissing this case with prejudice would be too harsh a sanction for Whittenburg's noncompliance with the filing fee order, so instead I will order the case to be dismissed without prejudice.

Accordingly:

(1) The Clerk is DIRECTED to attach a copy of Garrett Whittenburg's updated trust fund ledger to this order as Exhibit A;

(2) The motion to lift the stay (ECF 23) and related miscellaneous motions (ECF 24 & ECF 25) are DENIED; and

(3) This case is DISMISSED WITHOUT PREJUDICE for nonpayment of the filing fee.

SO ORDERED.

ENTERED:  June 20, 2025.

/s/   Philip P. Simon
PHILIP P. SIMON, JUDGE
UNITED STATES DISTRICT COURT